NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

GORBEA, PEREZ & MORELL, S. en C., Respondent.

No. 5918.

United States Court of Appeals First Circuit.

March 6, 1964.

**680**

Norton J. Come, Washington, D. C., Atty., with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Laurence Gold, Washington, D. C., Atty., were on the brief, for petitioner.

Jaime Pieras, Jr., San Juan, P. R., with whom Pieras & Martin, San Juan, P. R., was on brief, for respondent.

Before WOODBURY, Chief Judge, and MARIS * and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

In N. L. R. B. v. Gorbea, Perez & Morell, S. en C., 1 Cir., 1962, 300 F.2d 886, before passing finally on one aspect of a Board order we remanded for an expression of the Board's views on a matter that had not been noted in its initial opinion.[1] The Board has now responded, and by a three to two majority has concluded that the union involved[2] must be recognized in spite of the conduct that had given us pause. The facts, more fully set out in our earlier opinion, are briefly as follows. As an organizational incentive the union prominently[3] printed on its membership cards the following:

"NON PAYMENT OF INITIATION FEE

"Those who join now shall never have to pay an initiation fee. Those who wait until the contract is sign-

ed shall have to pay the regular initiation fee.

\* \* \* \* \*

"NO INITIATION FEE!"

In point of fact, although the international charter permitted an initiation fee, the union imposed none in Puerto Rico, so that there was in no real sense a "regular" initiation fee, and, more specifically, the announcement that those who waited "shall have to pay" admittedly stated the reverse of the union's procedure and intent. The Board's passing this off with the phrase "Whatever untruthfulness one might read into" it, and the observation that the union might change its mind later and make the waiver "worth something," does not meet the fact that there was a clear, positive misrepresentation. A statement is not any the less untruthful or material because under changed and presently unanticipated circumstances its falsity may be removed. If that were so the principle that misstating present intent is a misrepresentation would be meaningless.

■ The question whether there is interference with the employees' freedom of choice is often subtle and difficult. However, we start with one simplifying principle, avoiding the necessity of making the often impossible determination of its actual impact in the particular instance, that an inducement normally is material if objectively it is likely to have an appreciable effect. Cf. N. L. R. B. v. Trancoa Chem. Co., 1 Cir., 1962, 303 F. 2d 456, 461. Pinkerton's Nat'l Detective Agency, Inc., 1959, 124 N.L.R.B. 1076, 1077 & n. 3; Hurley Co., 1961, 130 N.L. R.B. 282, 283 n. 4; James Lees & Sons, 1961, 130 N.L.R.B. 290, 291 n. 1. But cf. Cross Co. v. N. L. R. B., 6 Cir., 1961, 286 F.2d 799, 801. The decisions recog-

---

\* Sitting by designation.

1. We also felt the subject might be more fully briefed, or that the Board might wish to take further evidence. This last it did not do.

2. Amalgamated Clothing Workers of America, AFL-CIO.

3. The prominence was not adverted to in the Board's opinion, which recited merely the small-letter text hereinafter quoted without indicating the presence of the conspicuously capitalized introduction and conclusion.

nize three categories of inducements: deeds, promises, and misrepresentations. In the first class are cash payments by the union, cf. Teletype Corp., 1959, 122 N.L.R.B. 1594, or similar tangible benefits from the employer, N. L. R. B. v. Exchange Parts Co., 1964, 375 U.S. 405, 84 S.Ct. 457, 11 L.Ed.2d 435, Coca-Cola Bottling Co. of Memphis, 1961, 132 N.L.R.B. 481, 483–484, designed to influence the employees' vote. The Board has suggested that what are promises depends upon the known ability of the maker to perform as distinguished from known inability, which latter makes the "promise" a mere prophecy, citing Cox, Some Aspects of the Labor Management Relations Act, 61 Harv.L.Rev. 1, 30–31 (1947), and Wilson Athletic Goods Mfg. Co. v. N. L. R. B., 7 Cir., 1947, 164 F.2d 637, 639–640. Cf. N. L. R. B. v. Exchange Parts Co., supra, ("a fist inside the * * * glove"). Thus the Board asserts that a representation by the union that it will obtain higher wages is a mere prophecy, while it has maintained that a promise by the employer that unionization will prevent higher wages (N. L. R. B. v. Whitelight Products Division of White Metal Rolling & Stamping Corp., 1 Cir., 1962, 298 F.2d 12, cert. den. 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288) is a promise—or threat— with teeth in it. In the exact matter presently at issue the Board stated in a previous case that a campaign announcement to the effect that after election the employees who had not previously joined would have to pay a substantially increased initiation fee was "merely a prediction," A. R. F. Prods., Inc., 1957, 118 N.L.R.B. 1456, 1458, which could not affect the employees' freedom of choice.

We are not impressed with this distinction. Unless one is willing to say that employers are all-powerful and unions ineffectual, a representation by a union that it will obtain higher wages is both a promise and a prophecy, and a representation by an employer to the contrary is precisely the same. The difference, it seems to us, is simply that the law regards the union's representation as proper and the employer's as improper.[4] So far as the effectiveness of the representation is concerned, however, we see no reason why employees should regard one as consequential and the other not.

By the same token, since a penny saved is a penny earned we have difficulty in seeing why a $10 bribe to join the union is septic, cf. Teletype Corp., supra, while a promise to waive a "regular" $25 initiation fee is benign because there is a contingency. It is true, as the Board says, that a contract may not be signed, and that even if one is signed it may not require present employees to join the union. But so, too, an employer may not succeed in keeping its promise not to raise wages if a union gets in. The employees in the case at bar were faced with weighing the undesirability (which we must assume they felt, or there would be no point in offering an inducement) of "joining now" as against the chances of having to join later at considerable expense. That the risk did not appear 100% does not mean that it did not appear substantial.

In its opinion the Board makes three points. First, it states that our earlier opinion "recognizes that it is not unreasonable for the Board to hold that a waiver of an initiation fee for employees who join a union prior to a Board election is a permissible promotional technique * * *." We did not intend to convey that impression, and used only the word "may." On rereading our opinion we perceive room for misunderstanding, which we regret. It was not our purpose to decide this problem piecemeal. Next, the Board states that "cumulated monthly dues" were a more "major" factor than the initiation fee. If by this the Board meant that the initiation fee was a "minor" factor, the basis for this conclusion

4. This is not the place to discuss the limits of propriety and impropriety. We are not saying, for example, that an accurate financial statement by an employer is an unfair practice even though its effect may discount union claims.

does not appear.[5] The Board's further suggestion that the waiver merely induced employees to do what they wished to do anyway carries little appeal. We think the better expert on what persuasion is needed by persons sought to be induced is the knowledgeable party who offers a consciously false inducement. Cf. N. L. R. B. v. Trancoa Chem. Co., supra, 303 F.2d at 461. Finally, the Board concluded, for reasons we have already adverted to, that the effect of the waiver was "too speculative."

Possibly realizing that we might not consider this a full answer, the Board addressed a portion of its brief to the natural question why a union should waive initiation fees if the matter was not of significance. Some of these were reasons (whether sound or not we need not determine) not specifically related to electioneering. Others, however, were clearly so directed. We mention only one as given in the brief which, incidentally, we think so sound as to be obvious.

"In sum, the principal purpose for a waiver of initiation fees is to shorten organizing campaigns. This has several advantages from the union's standpoint. First, it is difficult to maintain the momentum necessary for a successful drive to unionize a plant over a long period of time * * *."

If waiving initiation fees may spell the difference between a successful and an unsuccessful campaign it is hard to regard it as inconsequential.[6]

■ We are compelled to conclude that the waiver of initiation fees predicated upon joining before the election is a substantial organizational inducement. On the other hand, we fully agree with the Board that a pre-election promise permitting all present employees, whether they vote for the union or not, to join without payment of an initiation fee up to and within a reasonable time immediately after the election would not be an inducement. Gilmore Indus., Inc., 1962, 140 N.L.R.B. 100.[7]

■ It is suggested in the Board's opinion that this was the real meaning of the waiver in the case at bar because of the phrase, see supra, "until the contract is signed." In view of the primary emphasis given to the requirement of "joining now," we are more impressed with the Board's statement, which we find somewhat contrary to its ultimate conclusion, that it was "more probable that the employees did not subject the phrasing of the waiver to so close an analysis * * *." Ambiguities must be resolved against the union, and in the light of its intent as revealed by the patent untruthfulness of its statement. As we said in N. L. R. B. v. Trancoa Chem. Corp., supra, 303 F.2d at 461, "One must regard deliberateness [of a campaign misrepresentation] as an admission that the matter is important." We do not have here a genuine waiver supported by the economic reasons advanced by the Board with the inducing effects merely a concomitant incident. Rather, we have an inducement expressly sought for its

5. Assuming that the employees knew, in dollars, what was at issue, the monthly dues were $1.25, and the charter-authorized initiation fee $25. The Board's brief puts weekly earnings at $18 to $20. To such individuals $25 would seem what may be called serious money.

6. While it is possible to draw a distinction between buying memberships and buying votes, cf. Gruen Watch Co., 1954, 108 N.L.R.B. 610, on reflection it seems to us that as a matter of common sense a union with cards in its pocket must regard the outcome of an election substantially more hopefully than would one which had failed to obtain them.

7. In our opinion this solution should answer the contentions advanced by the Board, notably in its brief, that it is often necessary or at least desirable to waive initiation fees, particularly for unions just becoming established, so that whether or not this is an inducement any resulting effect on an election should be tolerated. We suggest that such a need can be sufficiently met and at the same time the inducing effect on the election can be obviated by announcing a somewhat later cutoff date, as was done in the cited case.

own sake; a bold attempt to buy membership at a phonily reduced rate. Accordingly, we think the two members of the Board who predicated their dissent on the ground of misrepresentation were in that regard inescapably correct, and that the record as a whole rebuts a finding that the union was the freely designated bargaining representative.

A decree will be entered setting aside the Board's order insofar as it requires recognition of the union as the representative of respondent's employees.