**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GAFNER AUTOMOTIVE & MACHINE, INC., Respondent.**

**No. 17486.**

United States Court of Appeals
Sixth Circuit.

Aug. 16, 1968.

Robert M. Lieber, Atty., N.L.R.B., Washington, D. C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel

Mallet-Prevost, Asst. Gen. Counsel, Paul J. Spielberg, Robert M. Lieber, Attys., N.L.R.B., Washington, D. C., on brief.

Walter S. Davis, Milwaukee, Wis., for respondent; Hoebreckx, Davis & Vergeront, Milwaukee, Wis., of counsel.

Before PHILLIPS, CELEBREZZE, and McCREE, Circuit Judges.

PER CURIAM.

This is a petition by the National Labor Relations Board for enforcement of an order based on findings that respondent had violated Section 8(a) (1) of the National Labor Relations Act by coercive interrogation, imposition of disciplinary rules in retaliation for union activity, threats of economic reprisal, and granting of improper economic benefits, and had violated Sections 8(a) (1) and 8(a) (5) of the Act by refusing to bargain with the union [1] representing a majority of an appropriate unit [2] of nineteen of its employees. The Board's Decision and Order, reported at 156 N. L.R.B. No. 63, directs respondent to cease and desist from specified unfair labor practices and to bargain with the union.

Respondent is a manufacturer of log loading machinery in Escanaba, Michigan. In November, 1964, certain of its employees became interested in union representation and approached union business agents to arrange for such representation. On November 23, nine employees met at the union hall with the business agents, but before any authorization cards were signed, the meeting was recessed until later in the evening. During the break, two other employees, Allgeyer and MaKosky, were solicited with regard to union membership, and, upon being told either that nine employees had signed up or intended to do so, executed authorization cards. When the meeting resumed, the employees were informed that the regular union in-

itiation fee of $84 would be reduced to $25 for them. All nine then signed cards. On November 25, when the union was in possession of 12 signed cards, the membership of employee Koehler was solicited and an authorization card was obtained from him. He testified that he recalled being told that thirteen employees had already signed up. Respondent refused the union's request to bargain on the basis of the signed authorization cards, and, in an election held on December 29, the union lost by a vote of ten to eight with three ballots challenged.

Soon after a union representative had spoken to respondent's president on November 24 with regard to collective bargaining, respondent's vice-president questioned a number of employees concerning their union membership. When told by one employee that he had not joined the union, the vice-president responded that he had better not. The next day, respondent's president told the employees that he did not want them talking together on the job. He also suggested that part-time help would be eliminated if the employees chose to be represented by the union. At a Christmas party held ten days prior to the election, the employees were informed that they would be given hospitalization insurance as a Christmas present, and that they would be paid for their Christmas holiday.

Respondent contends that the findings by the Board of coercive interrogation, discriminatory discipline, threats of reprisal, and improper economic benefits, and the further finding that respondent's refusal to bargain was not based upon a good faith doubt as to the union's majority status, are unsupported by substantial evidence. Respondent also contends that, because of the reduction in the union's initiation fee and because of misrepresentations made

1. Teamsters and Chauffeurs Union, Local No. 328, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

2. Respondent disputes the exclusion by the Board of two employees from the unit. We find no abuse of discretion by the Board in excluding these employees.

to certain employees, the authorization cards signed by these employees were invalid and the union therefore never succeeded in achieving majority status. We hold that the Board's factual findings are supported by substantial evidence, and we proceed to the matters of the union's fee reduction and misrepresentations.

■ In N.L.R.B. v. Gilmore Industries, Inc., 341 F.2d 240, 13 A.L.R.3d 984 (6th Cir. 1965), we considered waiver of initiation fees and observed that waiver did not in and of itself interfere with an employee's freedom of choice. The same would of course be true of a reduction in fees. We held in *Gilmore* that under the circumstances of that case, the waiver of fees invalidated the representation election, because the waiver was conditioned upon the outcome of the election and because the employees had been led to believe that they were receiving an economic benefit far greater than was actually the case. See N.L.R.B. v. Gorbea, Perez & Morell, S. en C., 328 F.2d 679 (1st Cir. 1964). In the instant case, the record does not indicate the presence of any of the factors found in *Gilmore* to have interfered with the employees' exercise of free choice, but instead supports the finding of the Board that as a new group, the employees would be required to pay an initiation fee of only $25 instead of the customary fee of $84 and that the offer of such a reduction was not coercive. The Board found "The evidence does not disclose that the

reduced rate was improperly limited or conditioned in any way as it appears to have been available to all of respondent's employees without restriction." [3] We therefore find that the reduction in fees provides no basis for invalidating the authorization cards.

■ While misrepresentation by union organizers is not a matter to be condoned, we do not believe the statements made in this case with regard to the number of signed cards already obtained requires the invalidation of the cards of the employees so informed. It is not clear from the record whether Allgeyer and MaKosky were informed that nine others had signed up, or merely intended to. In any event, the solicitors had reason to believe that the nine who attended the meeting at the union hall desired membership, and if any misrepresentation was involved, it was insubstantial. Equally without significance was the statement to Koehler that thirteen other employees had already signed, since those who had actually signed constituted a majority of the bargaining unit. Moreover, in none of these instances does the record suggest that the statements concerning the membership of other employees induced additional employees to join. See Amalgamated Clothing Workers of America v. N.L.R.B., 124 U.S.App.D.C. 365, 365 F.2d 898, 908 (D.C. Cir. 1966).

Under the circumstances of this case, we find the Board's remedial order to be

---

3. The relevant testimony is as follows:

Q. Now, you mentioned that your regular initiation fee is $84, but for a new group you take them in at Twenty-Five? A. That's right.

Q. Did you tell the employees that that night? A. Yes.

Q. What did you tell them in connection with that? A. The regular initiation fee is $84. As a new group we'll take them in at $25 as a reduced fee.

Q. Any indication given to the employees how soon they had to sign up to come in under the $25? A. I told them a certain amount down and given them a certain designated time to pay up the balance.

Q. Did you tell them what that time would be? A. If I recall, two weeks approximately.

Q. Two weeks. If they paid $10 down, you'd give them two weeks to pay another Fifteen; is that right? A. Approximately two weeks, yes.

Q. If they didn't join then, it would cost them $84; isn't that right? A. No, sir.

Q. What did you tell them? A. I said our fee is $84, and we'll take you in as a new group for $25.

Q. All right. And they had two weeks to pay the Twenty-five bucks; is that right? A. That's right.

an appropriate one, and enforcement is granted.

PHILLIPS, Circuit Judge (concurring).

It is with reluctance that I concur in granting enforcement of the bargaining order in this case. The Union reduced its membership fees from $84 to $25 as an inducement to obtaining signatures on authorization cards. The record is not positive as to the terms, conditions and duration of this reduction.

In N.L.R.B. v. Gilmore Industries, Inc., 341 F.2d 240, 242, 13 A.L.R.3d 984 (6th Cir.), this Court, speaking through a panel of which I was a member, held that in determining whether there was an interference with the employees' freedom of choice by the waiver of initiation fees, the waiver cannot be detached from the circumstances under which it was made. In that case we held that the economic inducement offered by the Union "was material and impeded a reasoned choice," citing N.L.R.B. v. Gorbea, Perez & Morell S. en C., 328 F.2d 679 (1st Cir.).

I agree with the views of Judge Friendly in his concurring opinion in Amalgamated Clothing Workers of America v. N.L.R.B., 345 F.2d 264, 268 (2d Cir.):

"Likewise there is nothing wrong in a union's offering to forgive initiation fees to those who join early, provided that the opportunity clearly remains open to everyone for a reasonable time after it has become entitled to recognition. But neither of these propositions leads to the conclusion that a union is not exerting improper influence if it waives fees for those who join immediately, while indicating that this advantage will be foreclosed to existing employees who have failed to anticipate and assist in accomplishing its victory."

The crucial question in the present case is whether the Union's reduction of fees was made available to all employees in the unit for a reasonable time after the Union became entitled to recognition.

The trial examiner's decision contains the following summary:

"On November 23, 1964 * * * a group of nine of Respondent's employees went to the union hall in Escanaba to join the Union. At that time the entire group signed authorization cards and applications for membership in the Union. One of the employees paid the full initiation fee at this time while the others each paid $10 toward the $25 fee which had been reduced to that amount from $84 as a group discount to the employees for a 2-week period. At the time these people met with the union officials and prior to signing their authorizations and membership applications, they were told that if the employer would not agree to recognize the Union as their bargaining agent, there would be a representation election. One of the assembled employees spoke up, and he said 'if we lose, then who gets the—how do we get the $25 back?' The union official answered him, 'If you have any doubt in your mind, forget it.'"

If the Union's substantial reduction of its initiation fee had been limited to a period of only two weeks, this of necessity in my opinion would constitute an inducement for a wavering employee to hedge his bet on the outcome of the election at a bargain rate, choosing to accept the discounted membership fee while available. Such an economic inducement clearly would interfere with the employees' freedom of reasoned choice.

The Board found, however, that the evidence does not disclose that the reduced rate was improperly limited or conditioned in any way and that it appears to have been available to all the employees without restriction. The Board construed the evidence to establish that the reduction in fees was not limited to a period of two weeks. This time limitation was found to apply only

to the period during which the fee could be paid; i. e., that any employee could join the Union by making a $10 payment at any time and by remitting the remaining $15 within two weeks. The Board concluded that any employees in the unit could take advantage of the reduced $25 fee either before or after recognition of the Union as bargaining representative. I cannot say that this conclusion is not a permissible interpretation of the testimony quoted in the third footnote of the majority opinion.

Unequivocal evidence undoubtedly was available to show the terms, conditions and duration of the rate reduction. It would have been better for affirmative evidence to have been introduced, rather than leaving this issue to speculation and inference.