The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Insurance Workers International Union, AFL–CIO, Intervenor.

No. 75–1030.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1975.

Decided Feb. 12, 1976.

Certiorari Denied May, 19, 1976. See 96 S.Ct. 2176.

Charles A. Horsky, Jerome Ackerman, Robert H. Loeffler, John W. Douglas, Washington, D. C., for petitioner.

Isaac N. Groner, Charles R. Both, Cole & Groner, P. C., Washington, D. C., for intervenor.

Elliott Moore, Alan Banov, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., for respondent.

Before EDWARDS, McCREE and MILLER, Circuit Judges.

EDWARDS, Circuit Judge.

Prudential petitions to review and set aside an order of the National Labor Relations Board requiring it to bargain with the Insurance Workers International Union for a unit of office workers at its Grosse Pointe, Michigan, District Office. The Board in turn cross-petitions for enforcement of its order. The Board decision is reported at 215 N.L.R.B. No. 30.

Two issues are presented. First, Prudential contends that the single District Office bargaining unit determined by the Board in this case is inappropriate. Prudential also argues that this court's opinion in *N.L.R.B. v. Pinkerton's, Inc.*, 428 F.2d 479 (6th Cir. 1970), sets standards for appropriate bargaining units which require the Board and this court to determine that, under the facts of this case, only a bargaining unit based upon Prudential's regional office encompassing 48 district offices in seven states is appropriate. On the other hand, the Board argues that the NLRB has wide discretion over determining the appropriate bargaining unit. In this regard the Board cites *NLRB v. Difco Laboratories, Inc.*, where this court held:

> The finding of the Board in the July representation case with regard to the appropriateness of the unit consisting of Difco's Department 35 production employees must be affirmed unless it can be said to be arbitrary or capricious or unless it violates some specific provision of the Act. See, e. g., *N. L. R. B. v. Prudential Ins. Co. of America*, 154 F.2d 385 (6th Cir. 1946); *N. L. R. B. v. Merner Lumber and Hardware Co.*, 345 F.2d 770 (9th Cir. 1965), cert. denied, 382 U.S. 942, 86 S.Ct. 397, 15 L.Ed.2d 352 (1965).

*NLRB v. Difco Laboratories, Inc.*, 389 F.2d 663, 667 (6th Cir.), *cert. denied*, 393 U.S. 828, 89 S.Ct. 91, 21 L.Ed.2d 98 (1968).

The Board also contends that its experience in insurance company cases has led it to consider a single district office as a presumptively appropriate bargaining unit. *Equitable Life Assurance Society*, 192 N.L.R.B. 544, 545 (1971); *Metropolitan Life Insurance Co.*, 156 N.L.R.B. 1408, 1414–15, 1418 (1966); *Quaker City Life Insurance Co.*, 134 N.L.R.B. 960, 962, 138 N.L.R.B. 61, *enf'd in pertinent part*, 319 F.2d 690 (4th Cir. 1963).

The only hearing in this case concerning the appropriateness of the bargaining unit was held before a Hearing Officer in the representation proceeding. Basing his findings on that record, the

Regional Director in his Decision and Direction of Election said:

> In determining the appropriateness of a single office unit in a multi-office situation the Board has repeatedly held a unit limited to a single petitioned-for location to be presumptively appropriate. *Equitable Life Assurance Society of the United States*, 192 NLRB 544. In the instant matter, I conclude that this presumption has not been overcome but, indeed, has been buttressed by the record. Thus, the Grosse Pointe District Office clerical employees are under the immediate and direct supervision of the office and district managers who control their hiring, promotions, pay raises overtime, job assignments, certain types of discipline, and who have the authority to recommend their discharges. There is minimal employee transfer,[5] between the Grosse Pointe

[5] There have been no temporary transfers of clerical employees into or out of the Grosse Pointe District Office. There have been no permanent transfers of clerical employees from the Grosse Pointe to any other district office and only two permanent transfers of clerical employees from other offices to Grosse Pointe. These two transfers were effected only after consulting the Grosse Pointe district manager. The record also contains evidence as to clerical transfers caused by a realignment of district offices apparently ordered by the North Central Regional Home Office. However, the last realignment simply resulted in the addition of two clerical employees to the Grosse Pointe office. There are no plans for additional realignments in the near future.

and other offices, and there are great distances between certain district offices within the Employer's proposed unit. It is clear that the day-to-day decisions concerning a clerical employee's terms and conditions of employment are made at the district office level and that said district office maintains the substantial degree of autonomy necessary for collective bargaining to effectively function. *Equitable Life Assurance Society of the United States, supra; Firemen's Fund Insurance Company*, 173 NLRB 982, *Metropolitan Life Insurance Company*, 156 NLRB 1408. I, thus, conclude that the following employees employed by the Employer share a sufficient and distinct community of interest separate from that of clerical employees in other district offices, so that they constitute a unit appropriate for the purpose of collective bargaining. *Bank of America National Trust and Savings Association*, 196 NLRB No. 76; *Empire Mutual Insurance Company*, 195 NLRB 284.

> All office clerical employees employed by the Employer at its Grosse Pointe District Office located in Harper Woods, Michigan; excluding agents, professional employees, guards and supervisors as defined in the Act.

Prudential's own managerial witnesses gave testimony which we read as supporting the facts found above. We recognize, of course, that Prudential argues that, in spite of this evidence of autonomy, "[r]esponsibility for and control of all significant decisions affecting the office and clerical staff is centralized in the Regional Home Office through various devices." The North Central Regional Home Office doubtless does have ultimate authority over every district office. Since, however, its authority encompasses 48 district offices in seven states, it would be an extraordinary feat to exercise that control on a day-by-day basis. We believe the Board's view that the district office has the degree of autonomy necessary for being an appropriate bargaining unit is supported by this record taken as a whole.

Prudential's reliance upon this court's majority opinion in the *Pinkerton's* case is inappropriate. There this court, in the context of a detective agency with operatives working by contract with many different plants in Ohio, found inappropriate a Board determination of a bargaining unit consisting of Pinkerton's employees in three small Ohio towns close to the Columbus, Ohio, Regional Office of the company. The court emphasized that a lieutenant with limited

authority was in charge of the employees in the bargaining unit found by the Board and that the Columbus Regional Office was "only a few miles" away—facts which obviously are not consistent with the record in the instant case.

■ The second issue presents a close parallel to the facts in *NLRB v. S & S Product Engineering Services, Inc.*, 513 F.2d 1311 (6th Cir. 1975). In *S & S Product* this court held that the union's waiver of dues for all employees up to the point when, as, and if the union succeeded in negotiating a contract with the company was "an across-the-board waiver of initiation fees to all employees of a bargaining unit [which] does not impede the free choice of the employees . ." and that such a waiver did not contravene the Supreme Court's decision in *NLRB v. Savair Manufacturing Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973). In distinguishing *Savair*, the Court said:

> We agree with the Board that *Savair* is distinguishable. We have said before that the waiver of initiation fees does not "in and of itself interfere with an employee's freedom of choice." *NLRB v. Gafner Automotive & Machine, Inc.*, 400 F.2d 10, 12 (6th Cir. 1968), *NLRB v. Gilmore Industries, Inc.*, 341 F.2d 240 (6th Cir. 1965). In *Gafner*, we upheld the Board's finding that a reduction of the initiation fee from $84 to $25 for a new group of employees was not coercive and was not improperly limited or conditioned in any way.

> Our reading of *Savair* suggests that the Supreme Court was concerned with the coercive impact of a waiver of fees made available only to those employees pledging their support to the union before the election. The Court explained:

>> Whatever his true intentions, an employee who signs a recognition slip prior to an election is indicating to other workers that he supports the Union. His outward manifestation of support must often serve as a useful campaign tool in the Un-

ion's hands to convince other employees to vote for the Union, if only because many employees respect their co-workers' views on the unionization issue. By permitting the Union to offer to waive an initiation fee for those employees signing a recognition slip prior to the election, the Board allows the Union to buy endorsements and paint a false portrait of employee support during its election campaign.

414 U.S. at 277, 94 S.Ct. at 499.

> In this case, as in *Gafner, supra*, the waiver was made applicable to all employees—not just those signing authorization cards before the election. The Supreme Court suggested, in dictum, that union interests could legitimately be served by offering the waiver to all employees.

>> The lower courts have recognized that promising benefits or conferring benefits before representation elections may unduly influence the representational choices of employees where the offer is not across the board to all employees but, as here, only to those who sign up prior to the election. See, *e. g., NLRB v. Gorbea, Perez & Morell*, 328 F.2d 679, 681–682 and nn. 6–7 (CA1 1964) (promise to waive initiation fee for those joining union prior to election, but not after, may substantially influence election); *Amalgamated Clothing Workers v. NLRB*, 2 Cir., 345 F.2d 264, 268–269 (Friendly, J., concurring) (improper to waive fees for those joining union immediately while indicating that this is foreclosed to those joining later).

414 U.S. at 279 n. 6, 94 S.Ct. at 500.

> Accordingly, we follow the rule expressed in *Gafner* and join the Fourth and Eighth Circuits in holding that an across-the-board waiver of initiation fees to all employees of a bargaining unit does not impede the free choice of employees. *See NLRB v. Wabash Transformer Corp.*, 509 F.2d 647 (8th Cir. Feb. 3, 1975), *NLRB v. Stone & Thomas*, 502 F.2d 957 (4th Cir. 1974).

*NLRB v. S & S Product Engineering Services, Inc., supra* at 1312–13.

We believe *S & S Product* is dispositive on this issue.

Enforcement of the Board's order is granted.