**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SAVAIR MANUFACTURING COMPANY, Respondent.**

No. 72-1225.

United States Court of Appeals, Sixth Circuit.

Dec. 11, 1972.

Roger Hartley, Asst. Gen. Counsel, Washington, D. C., for appellant; Marcel Mallet-Prevost, Elliott Moore, Roger Hartley, Gen. Counsel, N.L.R.B., Washington, D. C., Peter G. Nash, Washington, D. C., on brief. Jerome H. Brooks, Director, Region 7, N.L.R.B., Detroit, Mich., of counsel.

Robert J. Solner, Shea, Shea, Heath & Solner, Birmingham, Mich., for appellee.

Before CELEBREZZE, PECK and KENT, Circuit Judges.

PECK, Circuit Judge.

This case is before the Court upon a petition by the National Labor Relations Board for enforcement of its order issued against the respondent Savair Manufacturing Company. On September 22, 1970, an election by secret ballot was conducted among the Company's production and maintenance employees, which the Union (The Mechanics Educational Society of America) won by a vote of 22 to 20, with one ballot challenged and one ballot declared void. The Company then filed timely objections to conduct which it contended affected the results of the election, alleging, *inter alia*, that the Union deceived employees into believing that they would be fined an unspecified amount if they failed to sign an authorization card and if the Union won the election.

An evidentiary hearing was held before a Hearing Examiner to resolve the issues raised by the Company. In recommending that the Company's objections be overruled, the Hearing Examiner found that there was insufficient evidence upon which to conclude that such a threat occurred either before or after the filing date of the representation petition. He also found that the Union offered to waive the initiation fee for all employees who executed authorization cards prior to the election should the Union win the election, but that this offer of waiver was not objectionable under the Board's policy enunciated in DIT–MCO, 163 NLRB 1019, enf'd. N.L.R.B. v. DIT–MCO, 428 F.2d 775 (8th Cir. 1970). He concluded that the election was not improperly conducted, and that the Union is the exclusive representative of all employees in the unit for the purpose of collective bargaining. The Company's petition for rehearing was denied, and the Board subsequently granted summary judgment against the Company and ordered it to bargain with the Union. The Company has refused to do so, and the Board has brought this petition for enforcement of its order.

In Lobue Bros., 109 NLRB 1182 (1954), the Board held that a pre-election offer of reduced initiation fees is objectionable when the promised benefit is contingent on how the employees voted in the election or on the results of the election. In N.L.R.B. v. Gilmore Industries, 341 F.2d 240 (6th Cir. 1965), this

Court adopted the reasoning of the Board in *Lobue* and held that the economic inducement offered by a union in waiving initiation fees for those employees who sign authorization cards if the union wins the election impeded a reasoned choice because, under the circumstances of that case, the employees had been led to believe that they were receiving an economic benefit far greater than was actually the case. (See also N.L.R.B. v. Gafner Automotive & Machine, Inc., 400 F.2d 10 (6th Cir. 1968).)

In DIT–MCO, *supra,* the Board changed its policy, overruled *Lobue,* and held that an offer to waive initiation fees for those who sign authorization cards prior to an election is permissible whether or not it is conditioned upon the outcome of the election. The Eighth Circuit enforced the Board's order and held that the Board's new policy of not setting aside an election when a waiver or provisional waiver of union initiation fees, whether contingent upon the results of an election or not, was within the Board's discretionary powers to regulate the conditions under which an election may validly be held. 428 F.2d at 779.

In response to the Board's petition to enforce its order, the Company relies upon this Court's decision in *Gilmore.* The Board contends that the *Gilmore* case is no longer viable because in that case the court relied upon *Lobue,* which has since been re-examined and overruled by the Board. In presenting this argument, the Board displays a misunderstanding of the relationship which exists between the Board and this Court. The Board's actions are premised upon the assumption that when the Board changed its position from *Lobue* to DIT–MCO, it effectively overruled this Court's decision in *Gilmore,* and that this Court must follow the Board's lead and alter its decision in *Gilmore* accordingly. Such is not the case, and we find no reason, either procedurally or substantively, to alter our decision in *Gilmore.*

We note that while there is no question of fact concerning the offer to waive the initiation fees contingent upon the Union's victory in the election, there was some controversy as to whether or not this procedure was represented to the employees in terms of a "fine." The Hearing Examiner's findings on this issue indicate the confusion concerning initiation fees, fines and assessments that can be generated in the minds of those involved in a Union election:

"According to the uncontradicted testimony of Bridgeman, it appears that McKnight, in obtaining signatures from employees of union membership and authorization cards, told employees that they would be subject to a fine or an assessment fee if they did not sign the card in the eventuality that the union won the election. There was, therefore, a great deal of discussion among the employees as to whether they should sign the union authorization and membership card in view of the fact that regardless of their desires and how they would actually vote, they could save themselves some money in the event the union were successful. No specific amount was mentioned. Bridgeman used the word 'fine' interchangeably with 'assessment' and 'initiation fee.' His testimony is not entirely clear that McKnight used the word 'fine.' In any event, prior to the filing of the petition, because of the questions raised by employees, according to Bridgeman, McKnight telephoned Smith to find out what the union's policy was. The next day, employees asked McKnight whether it were true that they would have to pay a 'fine', McKnight answered in the affirmative and said that the employees could call Mr. Smith if they so desire and he gave them the telephone number. Subsequent to the filing of the petition, an employee meeting was held at a rented hall under the supervision of Mr. Smith at which approximately 20 employees were in attendance. Ac-

cording to Bridgeman, at the meeting the benefits of unionization were discussed and questions were invited from the floor. An employee asked Mr. Smith: '. . . if there was a fee, not fine, we can't call it a fine, to join, and in initation fee.' And: 'If there was a fee, you know if you didn't sign the slip [union authorization and membership card] and it was, in turn, [sic.] in before the election. There is a small fee, it was never stipulated what amount the fee should be.' According to Bridgeman, Smith answered: 'There would be a small fee.' No amount, according to Bridgeman, was ever specified. Bridgeman further testified that subsequent to that meeting, and prior to the election, Bennie McKnight told employees that if they signed the union membership and authorization card before the election, there would be no union 'initiation fee' if the union were successful at the election. Bridgeman was recalled to the stand twice. The second time he was recalled, he testified that McKnight referred to a 'fine' after the filing of the petition but was unable to specify the circumstances such as the contexts of the conversations and when and where they occurred. Under these circumstances and because of his proclivity to confuse and interchange the characterizations 'fine' with 'initiation fee', it is my finding that there is insufficient evidence based upon Bridgeman's testimony that a threat of a 'fine' occurred either before or after the filing date of the petition. Upon cross-examination, Bridgeman conceded that what Smith said at the meeting was that an initiation fee would be waived for all card signers who executed their cards before the election in the eventuality that the union won the election."

As indicated by the Hearing Examiner's report, most of the facts concerning the misrepresentation to the employees were not considered by the Board because this conduct occurred prior to the filing of the petition, and the Board has determined that conduct occurring prior to the filing of a petition will not be grounds for setting aside an election. Goodyear Tire and Rubber Co., 138 N. L.R.B. 453 (1962). We do not reach an examination of this policy because we do not agree with the Board that *Gilmore* should be overruled. We simply refuse to believe that the waiver of initiation fees, contingent upon the outcome of an election, whether it is referred to as a fine, an assessment, or a waiver of initiation fees, is not coercive in the context of a union election.

The facts of this case indicate that *Lobue* and *Gilmore* are sound decisions, and we conclude that the Board abused its discretion in declining to follow the *Gilmore* decision. Accordingly, upon a consideration of the arguments presented by both sides to this petition for enforcement, we respectfully decline to follow the Eighth Circuit (N.L.R.B. v. DIT–MCO, *supra*), and the Ninth Circuit (N.L.R.B. v. G. K. Turner Associates, 457 F.2d 484 (9th Cir. 1972)), noting that in neither of these cases was the Court called upon to overrule a controlling precedent of its own.

We have considered the other two arguments which the respondent has presented to this Court, and we conclude that they are without merit. The record indicates that the Board's conclusion that a full and fair hearing was provided to the Company, and its conclusion that an illiterate employee was not precluded from casting a valid vote by the actions of the NLRB representative at the election are supported by substantial evidence on the record as a whole.

Enforcement of the Board's order is denied.