**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**W. S. HATCH CO., INC., Respondent.**

**No. 71–2930.**

United States Court of Appeals, Ninth Circuit.

Feb. 1, 1973.

Robert Giannasi, Atty. (argued), Eugene B. Granof, Jan Weinberg, Attys., Marcel Mallet-Prevost, Asst. Gen. Counsel, Peter G. Nash, Gen. Counsel, NLRB, Washington, D. C., Roy O. Hoffman, Director, NLRB, San Francisco, Cal., for petitioner.

Samuel L. Holmes (argued), of Angel, Adams & Holmes, San Francisco, Cal., for respondent.

Kenneth Silbert, of Brundage, Neyhart, Grodin & Beeson, San Francisco, Cal., for charging party.

Before JERTBERG, DUNIWAY and TRASK, Circuit Judges.

DUNIWAY, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order, 190 NLRB No. 122, requiring the W. S. Hatch Company (the Company) to bargain with the Union upon request, as required by section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5). We enforce.

On July 6, 1970, the Union petitioned for an election among the employees at

the Company's Pittsburg, California plant. On July 23, the parties waived the representation hearing provided for by the Act, section 9, 29 U.S.C. § 159, and executed a Stipulation for Certification Upon Consent Election to be held at the Company's plant on August 10. Because of the nature of the Company's business—hauling—it could not estimate the number of employees who would be available to vote on August 10. The Acting Regional Director requested that the election be conducted by mail ballot. Not being compelled to agree, the Company refused, but gave its assurance that efforts would be made to have all employees available at the plant during the voting time. The Acting Regional Director approved the stipulation, and the election proceeded as scheduled. However, of the thirteen employees in the bargaining unit, only seven could vote on August 10, and only six voted. One employee had been transferred out of state and five others were away on work assignments. After the voting, the agents of the Acting Regional Director impounded the six ballots cast without counting them. On August 19, being unable to obtain the Company's consent to amend the stipulation to permit the remaining employees to vote by mail ballot, the Acting Regional Director rescinded his approval of the stipulation, vacated the election, and ordered a representation hearing pursuant to sections 3(b) and 9(c) of the Act, 29 U.S.C. §§ 153(b), 159(c).

Also on August 19, apparently before it received the Acting Regional Director's order, the Company wrote to him protesting his refusal to tally the ballots. This letter was forwarded to the Board, which treated it as a request to review the order and denied it "without prejudice to renewal in the representation proceeding scheduled for hearing on September 3, 1970." However, the Company refused to participate in that hearing, appearing for the sole purpose of contesting the Acting Regional Director's authority to order it. The Regional Director affirmed the action of the Acting Regional Director and ordered a mail ballot election for October 26, 1970, which was won by the Union by a vote of 8 to 4.

On November 11, the Company filed a petition with the Board asking it to tally the votes of the first election. The petition admitted that five employees had been absent from the plant because of work assignments, alleged that the sixth employee had been transferred at his own request, and argued that the election was nonetheless valid. The Board denied this petition, and the Regional Director certified the Union as the bargaining representative of the employees.

The Company refused to bargain with the Union, which filed unfair labor practice charges against the Company. The Company's answer admitted its refusal to bargain, but alleged that it had no duty to bargain, challenging the validity of the second election on the grounds set out in its November 11 petition. The Board's General Counsel moved for summary judgment and the Board transferred the case to itself for consideration of this motion. In its response to the motion the Company alleged for the first time that three of the five employees absent on work assignment on August 10 had either requested such assignment or were prevented from returning to the plant by mechanical failures. Noting that this evidence was neither newly discovered nor unavailable at the time of the representation hearing, the Board refused to reopen the issue of the validity of the first election, and granted the General Counsel's motion. Its subsequent order is the subject of this petition.

■■ It is Board policy to set aside elections when a significant number of employees have not had the opportunity to vote,[1] and its power to do so is be-

1. *See* Pepsi-Cola Bottling Co. of Princeton, Inc., 1969, 176 NLRB 716, 729; Yerges Van Liners, Inc., 1967, 162 NLRB 1259, 1260; Star Baking Co., 1957, 119 NLRB 835, 836; Alterman-Big Apple, Inc., 1956, 116 NLRB 1078.

yond question. Congress has entrusted the Board with a wide discretion in conducting and supervising elections. *See* NLRB v. A. J. Tower Co., 1946, 329 U.S. 324, 330–331, 67 S.Ct. 324, 91 L.Ed. 322. This Court has held that:

"Such discretion includes the determination of whether or not the opportunity afforded all eligible voters to exercise their rights was sufficiently 'adequate' or 'equal' as to reflect accurately the 'majority' required by the statute." International Telephone & Telegraph Corp. v. NLRB, 9 Cir., 1961, 294 F.2d 393, 395.

The Board has delegated broad authority to the Regional Director to conduct and supervise elections, *see* 29 C.F.R. § 101.21; thus he is vested with the same discretion.

The Company does not dispute these general principles. It argues that the Acting Regional Director had no authority to set the first election aside under the particular facts of this case. This is so, it says, because that election was conducted pursuant to a Stipulation for Certification Upon Consent Election, and was therefore subject to the limitations provided in 29 C.F.R. § 102.62(b). That regulation states in relevant part:

"(b) Where a petition has been duly filed, the employer and any individuals or labor organizations representing a substantial number of employees involved may, with the approval of the regional director, enter into an agreement providing for a waiver of hearing and a consent election leading to a determination by the Board of the facts ascertained after such consent election, if such a determination is necessary."

From this language the Company argues that the Acting Regional Director was "bound" by the terms of the stipulation, which said nothing regarding giving all employees an opportunity to vote, and that his role was limited to that of "an employee of the Board conducting the election." It concludes that only the Board could set the election aside.

■ The Board has not taken such a circumscribed view of the role of the Regional Director in conducting consent elections. In Super Valu Stores, Inc., 1969, 179 NLRB 469, a union filed a petition for an election among certain employees only hours before a consent election was to be held pursuant to a stipulation between the employer and another union. Following the election, the Regional Director ordered the ballots impounded without tallying them. Later, he rescinded approval of the stipulation and vacated the election. In sustaining this action, the Board stated: "Implicit in the Regional Director's authority to approve consent election agreements is his authority to revoke that approval when he determines that changed circumstances, discovered prior to the counting of the ballots, warrant such revocation." 179 NLRB at 469. This interpretation of section 102.62(b) is not plainly erroneous, and we are therefore bound by it. *See* Immigration and Naturalization Service v. Stanisic, 1969, 395 U.S. 62, 72, 89 S.Ct. 1519, 23 L.Ed. 2d 101.

■ The Super Valu Stores principle supports the Acting Regional Director's action in this case. The stipulation expressly provided that the election was to be conducted "in accordance with the . . . applicable procedures and policies of the Board," one of which was that all eligible employees should have an opportunity to vote. *Cf.* NLRB v. A. J. Tower Co., *supra,* 329 U.S. at 333–334, 67 S.Ct. 324. Furthermore, the Company had assured the Acting Regional Director that it would make every reasonable effort to have all of its employees at the plant during the voting period. Even if we were to assume that such efforts were made and that the specific reasons for the absence of some of the employees were facts which, if proved, would affect application of the Board's policy, thus requiring a determination by the Board under the terms of

section 102.62(b), the Company did not allege these facts until the unfair labor practice proceeding. The Acting Regional Director did not abuse his discretion in rescinding approval of the stipulation and vacating the first election without tallying the ballots.

■ Next, the Company argues that the Board should not have granted the General Counsel's motion for summary judgment. Primarily, it attacks the Board's use of its rule against re-litigation, 29 C.F.R. § 102.67(f),[2] to prevent it from presenting to a trial examiner evidence that it failed to introduce in the representation hearing.[3] It is settled in this Circuit that the Board may grant summary judgment in an unfair labor practice proceeding when no material factual issue exists. NLRB v. Red-More Corp., 9 Cir., 1969, 418 F.2d 890, 892; NLRB v. E-Z Davies Chevrolet, 9 Cir., 1968, 395 F.2d 191, 193. Thus, if section 102.67(f) is valid and was properly applied, the Company's argument must fail.

The Company would draw a line between what it calls the "investigative" functions of the Board and its "adjudicatory" functions. Under its scheme, representation proceedings fall within the former category, and unfair labor practice proceedings within the latter. Because representation proceedings are specifically exempted from the formal requirements of the Administrative Procedure Act, see 5 U.S.C. § 554(a)(6), matters litigated there must always be re-litigated in an unfair labor practice hearing where a refusal to bargain is charged. Any other procedure would in essence deny the party charged a hearing and hence violate due process.

■ The argument is elaborately spun, but we are not persuaded. The Board's order relating to the Company's August 19 letter specifically invited it to raise matters relating to the validity of the first election in the representation hearing. There it could have presented evidence, examined witnesses under oath, and submitted briefs. Establishing such a record would have fully preserved its right to judicial review of the Regional Director's determination. Thus, the requirements of due process were more then satisfied. NLRB v. Mar Salle, Inc., 1970, 138 U.S.App.D.C. 135, 425 F.2d 566, 571–573; NLRB v. Union Brothers, Inc., 4 Cir., 1968, 403 F.2d 883, 886–887.

Moreover, section 102.67(f) serves a valuable purpose in the Board's administration of the Act. Contrary to the Company's assertion, the series of proceedings designed to effectuate the employees' right to bargain collectively through a representative of their own choosing, beginning with a representation hearing and concluding with an unfair labor practice proceeding if the employer refuses to bargain, cannot be neatly segmented into "investigatory" and "adjudicatory" stages. This is vividly illustrated by the present case, where the Company admits its refusal to bargain with the Union, but attacks the process by which it was selected. The rule against re-litigation was designed to insure that such issues will be resolved early in the game, rather than permitting parties to hold back evidence knowing that they will get a second bite

---

2. That regulation provides in pertinent part:

"(f) . . . Failure to request review shall preclude such parties from relitigating, in any related subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in the representation proceeding. Denial of a request for review shall constitute an affirmance of the regional director's action which shall also preclude relitigating any such issues in any related

subsequent unfair labor practice proceeding."

3. At one point in its brief, the Company asserts that section 102.67(f) has no application to this case. (Br. at 14.) Presumably this is to protect its argument that the Acting Regional Director had no authority to order the representation hearing. In view of our disposition of that issue, it is clear that section 102.67 (f) does apply.

at the apple should they lose. We therefore join the other Circuits which have approved the procedure employed by the Board in this case.[4] NLRB v. Mar Salle, Inc., *supra*; NLRB v. Brush-Moore Newspapers, Inc., 6 Cir., 1969, 413 F.2d 809, 811–812; NLRB v. Union Brothers, Inc., *supra*.

The Company complains that the Board has "run roughshod" over it in this case. We are not moved. On the contrary, the Company has been playing cat-and-mouse with the Board, giving no ground when it did not feel absolutely compelled to do so. It must now suffer the consequences.

The Board's order is enforced.

———◆———

4. Other Circuits have held that section 102.67(f) cannot be applied when the subsequent unfair labor practice proceeding concerns something other than a refusal to bargain. *E. g.*, Heights Funeral Home, Inc. v. NLRB, 5 Cir., 1967, 385 F.2d 879, 881–882; Amalgamated Clothing Workers of America v. NLRB, 1966, 124 U.S.App.D.C. 365, 365 F.2d 898, 902–906. We are not faced with that issue in this case, and expressly decline to decide it.