## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## WABASH TRANSFORMER CORPORATION, Respondent.

### No. 74–1446.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1974.

Decided Feb. 3, 1975.

Stephen Quinn, Atty., N.L.R.B., Washington, D. C., for petitioner.

George W. Moehlenhof, McDermott, Will & Emery, Chicago, Ill., for respondent.

Before LAY and BRIGHT, Circuit Judges; and TALBOT SMITH, Senior District Judge.*

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

BRIGHT, Circuit Judge.

The National Labor Relations Board (Board) petitions for enforcement of its order issued against Wabash Transformer Corporation (Employer) of Farmington, Missouri, directing the Employer to bargain with the Communications Workers of America (Union) pursuant to 29 U.S.C. § 158(a)(5). The Employer, refusing to bargain, claims that the representation election was conducted in an unfair manner and that the subsequent certification of the Union by the Board was therefore invalid. We grant the order of enforcement.

Pursuant to a petition filed by the Union, a representation election was held for all production and maintenance workers at the Employer's Farmington, Missouri, plant on March 16, 1973. The Union won the election on a 50–43 vote and, after timely objections were filed by the Employer, a three-member panel of the Board validated the election and certified the Union as the exclusive bargaining agent for the workers at the Farmington plant.[1] The Employer's refusal to bargain generated this unfair labor practice proceeding. The Board, on April 30, 1974, ruled that the Employer had violated §§ 8(a)(5) and (1) of the Act (29 U.S.C. §§ 158(a)(5) and (1)), and ordered it to bargain with the Union.[2] The instant appeal followed.

The Employer objects to the conduct of the representation election on two grounds. First, it claims that the Board's agent conducting the election breached the Board's obligation of neutrality by announcing the opening of the polls over the Employer's loudspeaker system in the following manner:

> The Polls are open and you may now go vote and elect a union representative.[3]

Second, the Employer contends that the promise of the Union to waive the payment of initiation fees and dues until after the election and until the Union had negotiated a collective bargaining agreement with the Employer violated the recent Supreme Court decision of NLRB v. Savair Mfg. Co., 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973).

I.

In upholding the election, the Board acknowledged that its agent, in announcing the election over the loudspeaker, should have explicitly stated that an employee could vote against as well as for a Union representative. However, the Board majority declined to adopt the view that the agent's statement was *per se* violative of the Board's standards of neutrality. The Board concluded that the circumstances surrounding the statement established that the integrity of the election process was not so impaired as to warrant the ordering of a new election. We agree.

The announcement was made at approximately 6:30 A. M., immediately prior to the early morning opening of the polls, to accommodate three workers who were completing their night shift.[4] About 20 other employees were in the plant waiting for the morning shift to begin and may have heard the announcement. The same announcement, however, was not repeated when the polls reopened at 2:30 P. M. to receive votes from the workers on the morning and afternoon shifts. More importantly, the Director of Manufacturing for the Employer, who was present in the plant when the statement was made at 6:30 A. M., voiced no objection to the announcement. No evidence indicates that any employee was misled by the announcement and no claim is made that the

---

1. This decision is reported as Wabash Transformer Corporation, 205 NLRB 38 (1973) (Chairman Miller dissenting).

2. This decision is reported at 210 NLRB 68 (1974) (Chairman Miller dissenting).

3. The parties are in some disagreement over the exact phrasing of the agent's statement.

We accept the above-quoted version as offered by the Employer.

4. The Employer operates three shifts—11:00 P. M. to 7:00 A. M., 7:00 A. M. to 3:30 P. M., and 3:30 to 11:00 P. M. The polling sessions were from 6:30 to 7:00 A. M. and from 2:30 to 5:00 P. M.

Board's agents conducting the election favored the Union over the Employer.

The Supreme Court has observed, "Congress granted the Board a wide discretion to ensure the fair and free choice of bargaining representatives." NLRB v. Wyman-Gordon Co., 394 U.S. 759, 767, 89 S.Ct. 1426, 1430, 22 L.Ed.2d 709 (1969). See NLRB v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322 (1946); NLRB v. Waterman S.S. Co., 309 U.S. 206, 226, 60 S.Ct. 493, 84 L.Ed. 704 (1940). Under the circumstances here, the ruling that the questioned statement did not breach the neutrality of the election procedures fell within the Board's discretionary powers.

## II.

The Employer also contends that the Union's waiver of dues and initiation fees until after negotiation of a bargaining agreement[5] enabled the Union, in effect, to "buy" members before the election and portray a false picture of its employee support in violation of the rule laid down in NLRB v. Savair Mfg. Co., 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973). In Savair, the Court found that a union's offer to waive initiation fees for those workers signing union authorization cards before the certification election constituted an unfair labor practice. The Court reasoned:

Whatever his true intentions, an employee who signs a recognition slip prior to an election is indicating to other workers that he supports the Union. His outward manifestation of support must often serve as a useful campaign tool in the Union's hands to convince other employees to vote for the Union, if only because many employees respect their coworkers' views on the unionization issue. By permitting the Union to offer to waive an initiation fee for those employees signing a recognition slip prior to the election, the Board allows the Union to buy endorsements and paint a false portrait of employee support during its election campaign. [Id. at 277, 94 S.Ct. at 499.]

The Board reads Savair as precluding waivers of fees only when they are offered to employees as an inducement for pre-election support. The Board contends that the coercive effects of the practice condemned in Savair are absent in the instant case. We agree. The temporary waiver of dues for all employees does not have the effect of encouraging employees to make a false show of support for the Union in order to gain relief from certain fees. Indeed, a union's promise of temporary waiver of dues for all potential union members may serve to counteract an oft-used management argument that unions require workers to pay dues without guaranteeing the receipt of any tangible benefits.[6] Here, the Union assured the workers, whether Union supporters or not, that the Union demanded no dues until it successfully obtained a contract from the Employer. Such campaign tactics are not proscribed by Savair. The majority opinion in Savair notes the following:

The Board argues that unions have a valid interest in waiving the initia-

5. The Union distributed a leaflet on March 12, 1973, reading in relevant part:

Dues $5.50! Yes, your dues will be $5.50—AFTER WE HAVE SUCCESSFULLY BARGAINED A CONTRACT WITH THE WABASH TRANSFORMER CORPORATION—NOT A CENT BEFORE WE REACH AN AGREEMENT! This is a reasonable premium to insure better wages, fringe benefits and working conditions, plus a strong voice to review your grievances with the Company.

6. A leaflet, dated February 16, 1973, prepared by the Company for distribution to employees, reads in part:

Now lets discuss union dues: On this subject the union organizer does give you some facts. He says you are going to have to pay $6.50 per month for men; $6.00 per month for women. That's more than $10,000 a year he's going to extract from your collective pockets. No wonder he's interested in organizing this plant.

In addition, the envelopes with the workers' paychecks on March 9, 1973, contained the following message:

IF YOU BELONGED TO THE CWA TODAY THIS PAY CHECK WOULD BE SHORT $5.50 FOR THIS MONTH'S UNION DUES ____ THINK ABOUT IT!!!

tion fee when the union has not yet been chosen as a bargaining representative, because " '[e]mployees otherwise sympathetic to the union might well have been reluctant to pay out money before the union had done anything for them. Waiver of the [initiation fees] would remove this artificial obstacle to their endorsement of the union.' " \* \* \* While this union interest is legitimate, the Board's argument ignores the fact that this interest can be preserved as well by waiver of initiation fees available not only to those who have signed up with the union before an election but also to those who join after the election. The limitation imposed by the Union in this case—to those joining before the election—is necessary only because it serves the additional purpose of affecting the Union organizational campaign and the election. [414 U.S. at 274 n. 4, 94 S.Ct. at 497.]

*See* NLRB v. Stone & Thomas, 502 F.2d 957 (4th Cir. 1974).

Accordingly, we direct that the Board's order be enforced.