WARNER PRESS, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

and

Indianapolis Printing Pressmen, Assist-
ants and Offset Workers Union
Number 17, Intervenor.

No. 74–2029.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 8, 1975.

Decided Oct. 31, 1975.

Certiorari Denied March 1, 1976.
See 96 S.Ct. 1410.

Jack H. Rogers, Indianapolis, Ind., for petitioner.

Edward J. Fillenwarth, Jr., Indianapolis, Ind., for intervenor.

Elliott Moore, Deputy Associate Gen. Counsel, Alan D. Cirker and John D. Burgoyne, Attys., N. L. R. B., Washington, D. C., for respondent.

Before CASTLE, Senior Circuit Judge, and SWYGERT and PELL, Circuit Judges.

CASTLE, Senior Circuit Judge.

Warner Press, Inc. [the "Company"], petitions this court to review and set aside an order of the National Labor Relations Board directing it to bargain with the Indianapolis Printing Pressmen, Assistants and Offset Workers Union No. 17 [the "Union"]. The Board filed a cross-application for enforcement of its order and the Union intervened. The Company seeks to have an election, won by the Union, set aside on the grounds that (1) the Union misrepresented its constitution and by-laws regarding its authority to waive initiation fees and its procedure for levying fines, and (2) that the Union's offer to waive initiation fees of the Company's employees violated the Supreme Court's pronouncement in *NLRB v. Savair Manufacturing Company,* 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973). For the reasons set forth below, we enforce the Board's order.

I.

Warner Press, located in Anderson, Indiana, is an Indiana corporation engaged in the manufacture, sale, and distribution of religious printed matter and related products. In December of 1973, the Union filed a petition with the Board seeking a representation election among certain employees of the Company. The petition was granted and an election was scheduled for February 8, 1974.

By the middle of December 1973, the Union's organizational campaign at the Company was in full swing. Both the Union and the Company were saturating the employees with campaign literature. During the two weeks preceding the election, the Union twice stated that the initiation fees of those employees at the Company then employed would be un-

conditionally waived.[1] Also during this period the Union stated that "[t]here will not be any fines that we do not vote to impose."

The Union subsequently won the election and the Company thereupon filed objections to the conduct of the election. The Company claimed, among other things, that the Union had misrepresented its constitution and by-laws and had unlawfully offered to waive the initiation fees of the Company's employees. These Union acts, it urged, unfairly influenced the vote and required the election be set aside.

The Acting Regional Director investigated the Company's charges and submitted a report to the Board recommending that all of the objections be overruled in their entirety. He was of the opinion that the Union's statements regarding the waiver of initiation fees did not "purport to be so much a representation or statement of fact as to the contents of the union's constitution and by laws" but rather appeared "to be a guaranty that the recipient will not be required to pay initiation fees." While noting that nothing in the constitution and by-laws expressly "supported" the waiver, he pointed out that there was no evidence indicating the promised waiver would be dishonored by the Union. The Acting Regional Director also found that the alleged misrepresentation of the Union's fining procedure was insufficient grounds to warrant setting aside the election under *Hollywood Ceramics Company,* 140 N.L.R.B. 221 (1962), since the Company had "more than ample time to make further reply had it chosen to do so." He further recommended that the

Company's objection that the Union's promise to waive the fees violated the *Savair* decision be overruled. He reasoned that the waiver was permissible under *Savair,* since it applied to all of the Company's employees and not just to those who joined the Union before the election.

The Board adopted these recommendations and certified the Union. In order to obtain judicial review of the Board's certification order, the Company refused to bargain with the Union, and unfair labor practice charges were brought against it. In the unfair labor practice proceedings before the Board, the Board's General Counsel moved for summary judgment. Because the Company raised the same arguments before the Board that it had advanced in the representation proceedings, the Board granted the motion and ordered the Company to bargain. 215 N.L.R.B. No. 10 (Nov. 21, 1974). The Company thereupon sought review in this court.

## II.

The Company's primary contention in this appeal before us is that the Union misrepresented two separate provisions of its constitution and by-laws. The Company asserts that either of these alleged misrepresentations requires us to deny enforcement of the Board's order and set aside the election. In the alternative, the Company argues that the misrepresentations, if not sufficient in themselves to set aside the election, nevertheless violate the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 *et seq.* (1970), and

---

1. A Union leaflet, postmarked January 28, 1974, stated:

   There will never be any initiation for us who now work at Warner Press.

   A letter from the Union's president, dated February 5, 1974, and received by the Company's employees on February 6 and 7, stated:

   I, Robert D. Clements, do hereby undertake to guarantee that there will *never* be any initiation fees paid to Number 17 by employees of Warner Press who are on the

Company Payroll at the time that the first Contract is signed.

   This guarantee is extended unconditionally to all employees who are in the bargaining unit. I make this guarantee in the name of Indianapolis Printing Pressmen, Assistants' [sic], and Offset Workers Union Number Seventeen.

   In addition to these printed statements, numerous employees reported that they had been orally promised a waiver of initiation fees by members of the Union's organizing committee.

the Union should therefore be denied bargaining rights.

### A.

The first alleged misrepresentation involves the Union's offer to waive initiation fees of the Company's employees. The Company points out that the Union's constitution and by-laws nowhere expressly authorize such a waiver but rather in fact require that all membership applications be accompanied by initiation fees. Thus, the Company concludes that the Union had no power to waive initiation fees and therefore misrepresented to the employees that it could.

In support of this contention, the Company relies primarily on two sections of the Union's constitution and by-laws. Section 2 of Article II states:

No application for membership shall be considered until Initiation Fees have been paid to the Union, unless Initiation Fees are being deducted weekly under the check-off system.

And Section I of Article III provides in part:

No application for membership shall be considered until all requirements of Article II of the Constitution have been adhered to.

Nowhere in the constitution and by-laws, however, is the Union expressly given or denied authority to waive the fees if it so desires.

■ The provisions relied upon by the Company, in our opinion, do not prohibit the Union from unilaterally waiving the

initiation fees. Those provisions merely specify certain requirements for membership. In no way do they restrict the Union from modifying or waiving certain requirements. We cannot say that, when faced with an absence of express language in its governing documents on the point, a union may not choose to perform an act that is not prohibited by those documents.[2] To do so, we believe, would be interjecting ourselves into an internal union procedure.

■ It is elementary that for a misrepresentation to exist, there must be a false or misleading statement of a fact, or at least some distortion of the truth. See *NLRB v. Mr. Fine, Inc.*, 516 F.2d 60, 61 n.1 (5th Cir. 1975). For this court to hold that the Board erred in not finding a misrepresentation here, the Union must have represented that its constitution and by-laws permitted it to waive the fees when in fact those documents provided otherwise. The record, however, discloses that the Union never mentioned or referred to its constitution and by-laws in its waiver statements nor do those documents conflict with the Union's statements.

Furthermore, the Company does not contend that the Union failed to fulfill its promise to waive the fees. The Union's statements, therefore, have not been demonstrated to be untrue or misleading. The Union promised to waive the fees and it apparently has fulfilled that promise.

The present situation differs from that before us in *NLRB v. Southern Health Corp.*, 514 F.2d 1121 (7th Cir. 1975). In that case Chief Judge Fairchild of this court concluded that the union had mis-

**2.** We do not agree with the Company's contention that the Union's constitution and by-laws "expressly forbid" the waiving of initiation fees. Our examination of the constitutional provisions included in the record discloses no such "express" prohibition. Implicit in the Company's argument is the assertion that since the constitution does not "expressly" *permit* waiver, it necessarily must "expressly" *forbid* waiver. We do not agree with this type of reasoning. For this to be true, the Union's

constitution and by-laws must have been designed to create the Union as an organization of limited, enumerated powers. However, the portions of the Union's constitution presented in the record do not give rise to such a characterization. The Company has the burden here to demonstrate that the Union's constitution and by-laws make the Union a "creature" of enumerated powers. It has failed to carry that burden.

represented its power to fine members by making the following statement:

> Mr. Ragland [the company president] stated in his letter to you of May 8 that the Union fined people for crossing a picket line. What Union was he talking about? *It was not this Union because under our Union Constitution we cannot fine anyone.* [Emphasis added.]

This statement was found to misrepresent the union's constitution because that document expressly provided for "fines" as one type of discipline available to the union.[3] The union had therefore represented that its constitution provided something which in fact it expressly provided to the contrary. In the present case, however, the Union neither referred to its constitution nor represented in any way that it provided something contrary to what it actually provided. Furthermore, unlike the situation in *Southern Health,* the Union's constitution and by-laws in the instant case are silent concerning its power to waive initiation fees.

Nor do the decisions in *S. H. Kress & Company v. NLRB,* 430 F.2d 1234 (5th Cir. 1970), and *NLRB v. Winchell Processing Company,* 451 F.2d 306 (9th Cir. 1971), mandate a different result. In *S. H. Kress,* the Fifth Circuit found a material misrepresentation in the union's statement that each member would receive $1000.00 in death benefits when in fact the union's constitution provided only that an amount "up to" $1000.00 would be received. Moreover, the constitution placed several contingencies on the receipt of the money which the union failed to disclose. 430 F.2d at 1237–38. In *Winchell Processing,* the union claimed that the bargaining unit would determine whether strikes occurred. The Ninth Circuit found such a claim misrepresented the union's constitution which expressly provided that the entire local, not merely the bargaining unit, voted on strikes. 451 F.2d 309–10.

Again, the distinction between these two decisions and the instant case is apparent. The courts in *S. H. Kress* and *Winchell Processing* were confronted by untrue and misleading claims directly contrary to *express* provisions in the unions' governing documents. In the instant case, we are not faced with a union contradicting or falsely stating a clear and *express* provision of its constitution and by-laws.

Therefore, since the Union's constitution and by-laws are silent regarding its power to waive initiation fees, and since there has been no showing (nor has the Company even contended) that the Union did not in fact fulfill its promise to waive the fees, we hold that the Board did not err in concluding that the Union did not misrepresent its constitution and by-laws in this instance.

■■■ The Company alleges a second misrepresentation of the Union's constitution and by-laws regarding its procedure for levying fines. The Company argues that the Union's statement in its January 28 leaflet that "[t]here will not be any fines that we do not vote to impose" misrepresented the "fines" provision of its constitution and by-laws. That provision, Section 16 of Article V, states:

> A member who shall fail to appear before the Union or any of its authorized committees, when properly notified to do so, shall be fined not less than five dollars ($5.00) nor more than ten dollars ($10.00) *as recommended by the respective committees or by the Union.* [Emphasis added.]

Therefore, unlike the waiver of initiation fees situation discussed above, the Union's statement here was made in the face of an express provision of the constitution and by-laws dealing with the question.

The Company argues that this provision does not provide that the membership vote on fines as the Union's state-

---

**3.** This court in *Southern Health* went on to hold that the Board did not abuse its discretion in determining that the misrepresentation concerning the union's constitutional power to fine did not have a significant impact on the election. 514 F.2d at 1124.

ment represents, but rather provides that a committee imposes fines. The Union, on the other hand, contends that this section provides that a Union committee recommends fines with the ultimate decision remaining for the membership.

The test by which misrepresentations must be judged was set forth by this court in *Celanese Corporation v. NLRB*, 291 F.2d 224 (7th Cir. 1961). Only those misrepresentations which are material, made at a time which prevents effective reply, and are of a fact within the special knowledge of the party making it require an election be set aside. *Id.* at 226; *see also Hollywood Ceramics Company*, 140 N.L.R.B. 221, 223 (1962).

Upon reading Section 16, we believe that it is open to reasonable interpretation. However, we need not decide whether the Union's proffered interpretation is reasonable for we agree with the Acting Regional Director's finding concerning this statement.[4] Even assuming, as he did, that the Union's statement is misleading, it was nevertheless made 11 days prior to the election. This afforded the Company more than ample time to effectively respond and offer its interpretation of the Union's fining procedure. Therefore, the Union's state-

ment did not constitute grounds to set aside the election.[5]

### B.

■■■ In connection with these alleged misrepresentations, the Company argues that the Union has violated the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 *et seq.* (1970) [the "LMRDA"], by misrepresenting its constitution and by-laws. Since we have found that the Union misrepresented the fining provision of its constitution and by-laws, we must address this question.

The LMRDA requires unions, among other things, to adopt a constitution and by-laws and to file copies with the Secretary of Labor. 29 U.S.C. § 431. The Company argues that the purpose of this filing requirement is to assure that unions comply with their governing documents. The Union, it asserts, has violated the purpose of the LMRDA by misrepresenting its constitution and by-laws. The Company insists that the proper sanction for such a violation is to deny the Union bargaining rights.

A similar contention was before this court in *Schmerler Ford, Inc. v. NLRB*, 424 F.2d 1335, 1339–40 (7th Cir. 1970). In that case, Schmerler Ford maintained

---

4. The Company points out that the Board misstated this finding of the Acting Regional Director in its unfair labor practice decision and order. The Board restated the Acting Regional Director's finding concerning the "fines" misrepresentation as follows:

He [the Acting Regional Director] found that the Union had not misrepresented its constitution and by-laws with regard to fees and *dues,* but had merely guaranteed that they would be waived, as had traditionally been done and honored.

215 N.L.R.B. No. 10 at 3 (emphasis added). From this misstatement the Company argues that the Board "never even considered the Employer's objections based upon the fines issue." The Company fails to realize however that what is important is the Board's proper consideration of the "fines" misrepresentation issue in the representation proceedings earlier. There is no dispute that the Board properly considered and adopted the Acting Regional

Director's findings at that time and stated so correctly in its representation decision. In the unfair labor practice proceeding before the Board, the entire record and the Acting Regional Director's report were before it and we must assume that the misstatement was merely a technical error in drafting. The subsequent misstatement in its unfair labor practice decision, we believe, does not require us to deny enforcement of the Board's order or to remand the case to the Board to correct its technical error in drafting its opinion.

5. In so holding, we are not (as the Company contends that we are) ruling that "a union may, during an organizational campaign, ignore or misrepresent its constitution and by-laws with impunity." Rather, we are holding that a union's misrepresentation of its constitution and by-laws must be tested against the same standard as all other alleged misrepresentations.

that the union's alleged violation of the federal antitrust laws mandated denial of bargaining rights. This court disagreed, stating that "[a]ntitrust enforcement does not call for the sweeping and drastic sanction of union nonrecognition." *Id.* at 1339.

Assuming, *arguendo,* that a union's misrepresentation of its constitution violates the LMRDA, that Act nevertheless provides both criminal penalties and civil remedies for its violation. *See* 29 U.S.C. §§ 439 & 440. In light of this, we believe that enforcement of the LMRDA does not call for the additional "drastic" remedy of union nonrecognition.

The Company's reliance on *NLRB v. Mansion House Center Management Corp.,* 473 F.2d 471 (8th Cir. 1973), does not require a different result. There the court held that the Board could not participate in the maintenance of a union's racially discriminatory membership practices by granting it bargaining rights. We do not believe, however, that the interest in the instant case in assuring a union's compliance with its own constitution approaches in any way the interest in protecting federal constitutional rights that was before the *Mansion House* court. Furthermore, in *Mansion House* the court constructed what it believed to be an adequate remedy for the violation of constitutional rights since the fifth and fourteenth amendments did not themselves contain an adequate remedy. In the instant case, however, the LMRDA provides its own remedies which must be presumed to be adequate in absence of a showing to the contrary.

### III.

The Company also argues that the Union's promise to waive initiation fees violated the Supreme Court's *Savair* decision. In *Savair* the Supreme Court held that an offer to waive initiation fees conditioned on an employee's joining the union *before* the election was coercive and unjustly allowed a union to "buy endorsements and paint a false portrait of employee support during its elec-

tion campaign." 414 U.S. at 277, 94 S.Ct. at 499. The Acting Regional Director found the waiver in the instant case to be unobjectionable because it was made available to all employees employed at the time the first contract was signed regardless of whether they joined the union before or after the election.

The Company, however, insists that the Court in *Savair* condemned *any* waiver made prior to an election regardless of whether it remained open to those who joined the union after the election. Any such waiver, it contends, interferes with the employees' free choice to refrain from union activity as guaranteed by section 7 of the National Labor Relations Act.

This is not a question of first impression in this circuit. Even before the Supreme Court's *Savair* decision, this court had occasion to address the issue of whether an unconditional waiver of initiation fees for employees joining both before and after an election unfairly affected the outcome of the election. In *Macomb Pottery Company v. NLRB,* 376 F.2d 450, 454–55 (7th Cir. 1967), we held that it did not. An initiation fee waiver available to all employees regardless of when they joined the union was found to be unobjectionable because:

> [i]f the union won and a "contract is signed," the employee who voted against the union would have the same benefit (i. e., waiver of fee) as the employee who voted for the union. Any persuasive effect the promise of waiver may have on an individual employee in these circumstances is no different in kind from a statement of the amount of the dues or other representations of the advantages and burdens of membership. [*Id.* at 455.]

In a similar vein, the Supreme Court in *Savair* pointed out that a union's interest in waiving initiation fees was "legitimate" and could be

> preserved . . . by waiver of initiation fees available not only to those who have signed up with the union before an election but also to those

who join after an election. [414 U.S. at 274 n. 4, 94 S.Ct. at 497.]

Subsequent to the *Savair* decision, several courts of appeals relied on this latter language in holding that an unconditional waiver is not coercive and therefore unobjectionable. *See NLRB v. Benner Glass Company,* 514 F.2d 641, 642 (5th Cir. 1975); *NLRB v. S & S Product Engineering Services, Inc.,* 513 F.2d 1311, 1312–13 (6th Cir. 1975); *NLRB v. Wabash Transformer Corp.,* 509 F.2d 647, 649–50 (8th Cir. 1975); and *NLRB v. Stone & Thomas,* 502 F.2d 957, 958 (4th Cir. 1974) (dictum). Furthermore, in *Altman Camera Company v. NLRB,* 511 F.2d 319 (7th Cir. 1975), this court relied on this language in *Savair* to find an unconditional waiver of fees not to be an "improper inducement" of the employees. *Id.* at 322.

In light of these decisions, we find nothing in *Savair* to be inconsistent with our initial holding in *Macomb Pottery.* We therefore hold that the Acting Regional Director and the Board did not err in finding that the Union's promised waiver in the instant case was lawful.

## IV.

■ The Company requests that, if we do not set aside the election, we at least remand this case to the Board for a hearing. We deny this request. As this court most recently stated:

> It is well established that in a refusal-to-bargain unfair labor practice proceeding, there need be no evidentiary hearing to establish facts on which a certification is challenged if the company's objections have been adequately litigated and determined in the prior representation proceeding. [*NLRB v. Southern Health Corp.,* 514 F.2d 1121, 1125–26 (7th Cir. 1975).]

We believe the Company's objections in the instant case were "adequately litigated and determined in the prior repre-

sentation proceeding." No remand, therefore, is necessary.

Accordingly, the Company's petition for review is denied and the Board's cross-application for enforcement is granted.[6]

Enforcement granted.

**6.** We have examined the Board's order and have found it not to be "too broad" as the Company contends. "Having found the acts which constitute the unfair labor practice the Board is free to restrain the practice and other like or related unlawful acts." *NLRB v. Express Publishing Company,* 312 U.S. 426, 436, 61 S.Ct. 693, 700, 85 L.Ed. 931 (1941).