**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**L. D. McFARLAND COMPANY,
Respondent.**

No. 75–3364.

United States Court of Appeals,
Ninth Circuit.

March 27, 1978.

Rehearing Denied May 4, 1978.

Choy, Circuit Judge, dissented and filed
opinion.

William Stewart (argued), Portland, Or., for petitioner.

George J. Tichy (argued), Spokane, Wash., for respondent.

Before ELY and CHOY, Circuit Judges, and HALL,* District Judge.

ELY, Circuit Judge:

The National Labor Relations Board (Board), pursuant to Section 10(e) of the National Labor Relations Act, as amended, 29 U.S.C. § 151, *et seq.* (the Act), petitions for enforcement of its Order, issued on July 28, 1975. The Board's Decision and Order is reported at 219 NLRB 575 (1975) and holds that the respondent L. D. McFarland Company (Company) violated Section 8(a)(5) and (1) of the Act by refusing to bargain with

---

* Honorable Peirson M. Hall, Senior District Judge, Central District of California, sitting by designation.

the Union.[1] We are convinced that the Board's Petition should be granted and that its Order must be enforced.

## FACTS

Pursuant to an agreement between the Company and Union, a consent election was held at the Company's Eugene, Oregon, facility on April 25, 1973. The employees voted 16 to 13 in favor of the Union, with two challenged ballots.[2] The Company thereafter filed two timely objections to the election, alleging that the election was invalid because (1) the Union had improperly induced employees to vote for the Union by offering to waive dues and initiation fees, and (2) the Board agent conducting the election had closed the polls early, thereby denying a potentially eligible employee the opportunity to vote. After an administrative investigation, the Regional Director rejected the Company's claims and recommended that the Union be certified, finding no impropriety in the Union's waiver of fees and dues and finding also that the putative voter was ineligible because he had been previously laid off permanently without any prospect of being recalled. The investigation revealed that on about April 12, 1973, the potential "voter" had, in fact, become employed elsewhere on a full-time basis.

The Company filed two timely exceptions to the Regional Director's findings and recommendation, reasserting its original objections and claiming that factual questions had been raised which required an evidentiary hearing. Additionally, the Company also added for the first time an objection founded upon alleged conversations taking place in or near the polling area. The Board certified the Union without an evidentiary hearing, rejecting the Company's original two exceptions as raising no substantial or material issues of fact or law warranting reversal of the Regional Director's findings and recommendation and refusing to entertain the added objection on

the grounds that it was conclusionary and untimely.

Subsequently, the Company refused to bargain after being requested to do so by the Union. After the filing of an unfair labor practice charge by the Union, the General Counsel issued a complaint based on the Company's failure to bargain. The Company conceded its refusal to bargain. It argued, however, that such action was nonetheless lawful, again reasserting its objections that the election was invalid and that the consequent certification of representative was void. On cross motions for summary judgment, the Board rejected the Company's objections and held that the respondent Company had violated the Act. The Board again rejected the Company's request for an evidentiary hearing, finding that all the issues were litigated, or could have been litigated, in the previous representation proceeding and that the Company had not shown any special circumstances warranting a reexamination of the decision reached in the representation proceeding. The Board now seeks enforcement of its Order requiring that the Company bargain in good faith.

### I

The Company here resists the Board's Petition for Enforcement on the ground that the election was invalid and the consequent certification of representative erroneous, reasserting all of its previous objections.

### A

First, the Company contends that the Union improperly offered to waive initiation fees and dues in exchange for the votes of the employees. The foundation for this assertion derives from a letter sent to the employees by the Union four days before the election. The letter stated, *inter alia*:

THERE WILL BE NO INITIATION FEE FOR ANY MEMBER PRESENTLY WORKING IN THE PLANT.

---

1. Williamette Valley District Council, Lumber and Sawmill Workers Union.

2. These challenges were never resolved, since the number of disputed ballots was insufficient to alter the outcome of the election.

THERE WILL BE NO MONTHLY DUES UNTIL A CONTRACT IS NEGOTIATED.

The respondent Company argues that this Union action violated the standards pronounced in *N.L.R.B. v. Savair Mfg. Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973). There, the Court held that union promises to waive initiation fees are improper and require an election to be set aside if the promise is conditioned upon a showing of pre-election support for the union. *Savair*, however, made equally clear that unconditional offers to waive initiation fees for all employees, including those who become members after the election, are proper. *Id.* at 274, 94 S.Ct. 495, 38 L.Ed.2d 495, n.4; *N.L.R.B. v. Aaron Bros. Corp.*, 563 F.2d 409, 412 (9th Cir. 1977); *Warner Press Inc. v. N.L.R.B.*, 525 F.2d 190, 196–97 (7th Cir. 1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976).

The Board here found that the term "member" was a shorthand form for "incoming member" and, consequently, that there was no requirement to join the Union before the election or otherwise support the Union prior to the election as a condition for the waiver of initiation fees. Accordingly, the Board found that "the waiver of dues and initiation fees here was unconnected with support for the Union before the election, unrelated to a vote in the election, and was without distinction between joining the Union before or after the election." 219 NLRB 575, 576 (1975).

■ We note at the outset that "Congress has entrusted the Board with a wide discretion in conducting and supervising elections." *N.L.R.B. v. W. S. Hatch Co.*, 474 F.2d 558, 561 (9th Cir. 1973); *N.L.R.B. v. Southern Health Corp.*, 514 F.2d 1121, 1123 (7th Cir. 1975). Accordingly, we are not empowered to overturn findings and conclusions of the Board unless, viewing the record as a whole, we can say with conviction that they are not supported by substantial evidence. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 487–91, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Here, we are satisfied that the Board did not abuse the discretion

entrusted to it. The full record contains ample support for the Board's conclusion that the nexus between pre-election support and waiver of initiation fees forbidden by *Savair* was absent. Similarly, the waiver of dues until an anticipated contract is negotiated is likewise permissible under *Savair*. *N.L.R.B. v. Con-Pac, Inc.*, 509 F.2d 270, 272–73 (5th Cir. 1975); *N.L.R.B. v. Wabash Transformer Corp.*, 509 F.2d 647, 649–50 (8th Cir. 1975).

■ We are also unpersuaded by the Company's argument that the election should be set aside because the term "member" was impermissibly ambiguous. The Board rejected this contention and we do also. The Company's reliance upon *Inland Shoe Mfg. Co.*, 211 NLRB 724 (1974), is misplaced. There, the Board set aside an election in which the union distributed literature stating that there would be "no initiation fees for charter members of a new local." *Id.* Further, this representation was accompanied by efforts of the union to obtain authorization cards prior to the election. As the Board stated, the "[e]mployees could well have been induced to become early card signers on the reasonable belief that only thereby could they become 'charter members' eligible for a waiver of initiation fees." *Id.* at 725. Moreover, in other decisions in which the Board set aside an election because of ambiguous offers to waive initiation fees, the term "charter members" or "charter membership" was used in conjunction with active and concurrent efforts to obtain union authorization cards or pledges. *See D.A.B. Indus., Inc.*, 215 NLRB 527 (1974); *Calif. State Automobile Assn.*, 214 NLRB 223 (1974); *Coleman Co.*, 212 NLRB 927 (1974). Neither of these factors are present in this case. Accordingly, the Union offer to waive initiation fees was neither improper nor impermissibly ambiguous.

### B

■ The Company next argues that the early closing of the polls invalidated the election by destroying the required laboratory conditions. The polls were, by agree-

ment, to remain open from 4 to 5 p. m. on election day. The Board agent conducting the election closed the polls, however, at about 4:20 p. m. after all the voters on the eligibility list had cast ballots. Thereafter, about 4:45 p. m., a potential voter, later determined by the Regional Director's investigation to have been ineligible, arrived at the polling place to vote, but was unable to do so inasmuch as the polls were already closed. The Regional Director rejected this objection because the potential voter was, in fact, ineligible. The Board, in certifying the Union as the bargaining representative, rejected the objection as well, finding no reason to reconsider the Regional Director's findings. The Board refused to alter its position in the unfair labor practice proceeding.

■ The Company's argument on the point has no merit. The Regional Director plainly found that the putative voter had been a temporary employee of the Company, had been laid off permanently with no expectation of recall, and had, in fact, become employed elsewhere by the time of the election. This former employee clearly was not eligible to vote. If an election is to be set aside because of a deviation from the scheduled voting times, it must be affirmatively shown that eligible voters, sufficient in number to affect the result of the election, were disenfranchised as a result of the change. *N.L.R.B. v. Smith*, 438 F.2d 17, 20 (5th Cir. 1971); *Piper Indus., Inc.*, 212 NLRB 474, 476 (1974); *A. D. Julliard and Co.*, 110 NLRB 2197, 2199 (1954); *Repcal Brass Mfg. Co.*, 109 NLRB 4 (1954). This, the Company did not and could not do.[3] Consequently, the early closing of the polls resulted in no prejudice to the Company

and cannot justify the invalidation of the election.

*C*

■ The Company's third and last objection to the validity of the election and subsequent certification of the Union is premised on conversations alleged to have taken place between the Union observer and two employees in the polling area. As noted previously, the Board, in certifying the Union, refused to consider the merits of the objection because it was untimely, having been filed well beyond the five-day period that commenced after the tally was furnished to the parties. Five days is the prescribed time period for the filing of such objections. 29 C.F.R. § 102.69. The Company came forward with no evidence of special circumstances justifying the belated filing. The Board did not abuse its discretion in refusing to consider the objection, either in the representation proceeding, or in the unfair labor practice action.

■ Moreover, we are convinced that no injustice was visited upon the respondent Company. The objection is without merits. *Milchem, Inc.*, 170 NLRB 362, 363 (1968), upon which the Company bases its objection, requires that an election be set aside if there are "prolonged conversations between representatives of any party to the election and voters waiting to cast ballots." The Company does not allege that the employees engaged in conversation with the Union observer were voters waiting to cast ballots. Therefore, the Board, even had it considered the merits of the objection, would have been obliged to reject it. *See Sonoco Products Co. v. N.L.R.B.*, 443 F.2d 1334, 1337 (9th Cir. 1971).

3. Respondent Company cites and relies upon *Bonita Ribbon Mills and Brewer Weaving Co.*, 87 NLRB 1115 (1949), for the proposition that the early closing of the polls requires invalidation of the election, regardless of whether any eligible voters were disenfranchised. The main issue in the *Bonita* decision was whether a party had to show that eligible employees were actually prevented from voting by the early closing of the polls or whether the presence of eligible employees who had not yet voted was sufficient. To the extent that *Bonita* may rea-

sonably be read for the proposition that eligibility of disenfranchised "voters" is irrelevant, it is obviously inconsistent with sound public policy, as well as with later Board decisions. *See* cases cited in text *supra*. Indeed, in *A. D. Julliard and Co.*, 110 NLRB 2197, 2199 (1954), the Board, after citing several cases dealing with deviations in scheduled voting times, including *Bonita*, stated that "[d]isenfranchisement of some eligible voters as a result of the change was affirmatively shown in each of [the] cases."

## II

The Company contends that the Board erred in rejecting its objections to the election without an evidentiary hearing. The applicable rule in our Circuit was set forth in *Alson Mfg. Aero. Div. of Alson Indus., Inc. v. N.L.R.B.*, 523 F.2d 470, 472 (9th Cir. 1975):

"It is true that in order to obtain a hearing in a post-election representation proceeding, the objecting party must supply prima facie evidence, presenting 'substantial and material factual issues' which would warrant setting aside the election. 29 C.F.R. § 102.69(c). It is also correct that a hearing is unnecessary where if all the facts contended for by the objecting party were credited, no ground is shown which would warrant setting aside the election. *N.L.R.B. v. Smith Industries, Inc.*, 403 F.2d 889, 892 (5th Cir. 1968); *N.L.R.B. v. Harrah's Club*, 403 F.2d 865, 869 (9th Cir. 1968)."

Furthermore, in order to raise "substantial and material factual issues," the objecting party must do more than disagree with the Regional Director's findings and conclusions.

"It is incumbent upon the party seeking a hearing to clearly demonstrate that factual issues exist which can only be resolved by an evidentiary hearing. The exceptions must state the specific findings that are controverted and must show what evidence will be presented to support a contrary finding or conclusion. * * * Mere disagreement with the Regional Director's reasoning and conclusions do[es] not raise 'substantial and material factual issues.' This is not to say that a party cannot except to the inferences and conclusions drawn by the Regional Director, but that such disagreement, in itself, cannot be the basis for demanding a hearing. To request a hearing a party must, in its exceptions, define its disagreements and make an offer of proof to support findings contrary to those of the Regional Director. The Board is entitled to rely on the report of the Regional Director in the absence of specific assertions of error, substantiated by offers of proof. (Citations omitted.)" *N.L.R.B. v. Griffith Oldsmobile, Inc.*, 455 F.2d 867, 868–69 (8th Cir. 1972).

On the record before us, we cannot say that the Board abused its discretion in refusing to conduct an evidentiary hearing as requested by the Company. The respondent Company came forward with no substantial offer of proof to contradict the Regional Director's findings. The only evidence offered by the Company was an affidavit by an employee bearing on the *Savair* issue. This affidavit was belatedly presented for the first time as part of the Company's motion for summary judgment in the present unfair labor practice proceeding, although its relevancy to the earlier representation proceeding was clear.[4] On this paltry showing, the Company failed to meet its burden of raising substantial and material issues.

We conclude that the Board's Decision and Order was substantively and procedurally proper. Accordingly, its Order will be ENFORCED.

CHOY, Circuit Judge, dissenting:

Since I cannot conscientiously find that the evidence supporting the Board's majority decision is substantial, I must dissent. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1950); *Arizona Public Service Co. v. NLRB*, 453 F.2d 228, 230 (9th Cir. 1971). Rather, I agree with the two dissenting members of the Board that the plain meaning of the

---

4. Although the Supreme Court's *Savair* decision was rendered after the representation proceedings here, the relevancy of the offered affidavit had been made clear by judicial authority extant at the time. *See, e. g., N.L.R.B. v. Savair Mfg. Co.*, 470 F.2d 305, 307 (6th Cir. 1972); *N.L.R.B. v. Gilmore Industries, Inc.*, 341 F.2d 240, 242 (6th Cir. 1965); *N.L.R.B. v. Gorbea, Perez, and Morell*, 328 F.2d 679, 682 (1st Cir. 1964). Absent previously unavailable or undiscovered evidence, matters which could have been or were litigated in a representation proceeding cannot be relitigated in the related unfair labor practice case. *N.L.R.B. v. Hatch Co., Inc.*, 474 F.2d 558, 562–63 (9th Cir. 1973).

262

Union's waiver of initiation fees, which was communicated to the company employees four days before the union election, violated the rule of *NLRB v. Savair Manufacturing Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973).

The three majority Board members' reading of the waiver by inserting the word "incoming" before "member" is unwarranted. The sentence "There will be no initiation fee for any member presently working in the plant" must be read through the eyes of the employees of the company who were the targets of the waiver. It seems only natural to me that they concluded that they must *be presently working* there and *be members* of the union—prior to the election, not afterwards. I believe the minority Board members were entirely correct in their conclusion that the conditional waiver had the proscribed effect of allowing the union "to buy endorsements [from the employees] and thus painted a false portrait of employee support during its election campaign." *Savair*, 414 U.S. at 277, 94 S.Ct. at 499.

I would deny enforcement.